1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BRACAMONTES, | No. 2:23-cv-02697-DAD-CSK |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING THE PROCEEDINGS PENDING ARBITRATION |
| UNITED RENTALS, INC., | |
| Defendant. | (Doc. No. 12) |

This matter is before the court on defendant's motion to compel arbitration. (Doc. No. 12.) On February 2, 2024, the pending motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 14.) For the reasons explained below, the court will grant defendant's motion to compel arbitration.

**BACKGROUND**

On October 11, 2023, plaintiff Sarah Bracamontes initiated a discrimination action against her employer defendant United Rentals, Inc. in the San Joaquin County Superior Court. (Doc. Nos. 1 at 1; 1-1 at 2–3.) On November 17, 2023, defendant removed the action to this court pursuant to 28 U.S.C. § 1441. (Doc. No. 1.) In her operative complaint, plaintiff asserts individual claims under California Government Code §§ 12940, *et seq.* for gender discrimination, retaliation, failure to take all reasonable and necessary steps to prevent and correct discrimination

and retaliation, and wrongful termination.  (Doc. No. 1-1 at ¶¶ 44–70.)  Plaintiff also brings an individual claim for intentional infliction of emotional distress.  (*Id.* at ¶¶ 113–19.)  In addition, plaintiff asserts claims under the California Labor Code and the applicable wage orders and alleges that defendant failed to provide required meal periods, rest periods, and accurate and complete wage statements.  (*Id.* at ¶¶ 71–112.)  She brings these latter three claims on behalf of herself and other allegedly aggrieved employees under California Labor Code §§ 2698, *et seq.*, the Private Attorneys General Act ("PAGA").

On February 13, 2024, defendant filed the pending motion to compel arbitration, contending that plaintiff signed two arbitration agreements.  (Doc. No. 12.)  Defendant alleges that first, while applying for a position with United Rentals, plaintiff signed an agreement stating that both parties were "mutually required to arbitrate any and all disputes, claims, or controversies . . . against the other that could be brought in a court."  (*Id.* at 8.)  In support of this contention, defendant attached a declaration from Malcolm March, the human resources director of the West division of United Rentals, Inc.  (Doc. No. 12-3.)  March attested that he reviewed the human resources records for the United Rentals location at which plaintiff worked and confirmed that she signed her first arbitration agreement with defendant on August 30, 2017 as part of the application process.  (*Id.* at ¶ 5.)  Defendant also attached that agreement bearing plaintiff's electronic signature.  (Doc. No. 12-4 at 6.)  Moreover, defendant contends that once hired, plaintiff again agreed to arbitrate "any and all disputes, claims, or controversies" arising from her employment with defendant by electronically signing an employment agreement that contained an arbitration provision.[1]  (Doc. No. 12 at 8; 12-4 at 5.)  March attested to the existence of this agreement as well, confirming that a review of defendant's records shows that plaintiff signed the second agreement on September 9, 2017, as part of the onboarding process.  (Doc. No. 12-3 at ¶ 5.)  Defendant has also submitted a copy of this agreement bearing plaintiff's electronic

/////

---

[1]  The court notes that defendant refers to the arbitration provision within the employment agreement as the "Arbitration Agreement" and brings its motion to compel arbitration only as to this agreement, and not the first agreement signed during the job application process.  The court will adopt this naming convention in the discussion section of this order below.

signature.  (Doc. No. 12-5 at 7.)  Lastly, defendant has filed a request for judicial notice in support of its motion.  (Doc. No. 13.)[2]

On February 28, 2024, plaintiff filed her opposition to defendant's motion, arguing only that she never agreed to arbitrate, that defendant waived its right to compel arbitration through its delay, and that her PAGA claims are not subject to arbitration.  (Doc. No. 15 at 3–7.)  The next day, plaintiff filed an amended version of her opposition with minor changes.  (Doc. No. 16.)[3]  In support of her opposition, plaintiff attached her own declaration in which she states that there was no arbitration agreement displayed for review and electronic signature during her onboarding process.  (Doc. No 16-1 at ¶ 4.)  Plaintiff declares that she never signed such an agreement, that she would have remembered if she did, and that she believes her signature was forged.  (*Id*. at ¶¶ 4–7.)

On March 8, 2024, defendant filed its reply.  (Doc. No. 17.)  Attached thereto was another declaration from human resources director March.  (Doc. No. 17-1.)  In it, March details the steps a job applicant would have been required to complete in order to submit an employment application with defendant and to complete the onboarding process once offered a position.  (*Id*. at ¶ 3.)  He describes that an applicant would first have to make an account using their own email address and by creating a unique password.  (*Id*. at ¶ 4.)  These credentials would need to be entered each time to access the account.  (*Id*.)  The password would not have been shared with defendant and would only be known to the applicant.  (*Id*.)  Next, an applicant was required to complete the employment application.  (*Id*. at ¶ 5.)  An arbitration agreement would have appeared on one of the final screens presented to the applicant, and the applicant would have had to click through it to proceed to the final step.  (*Id*.)  The last screen would have stated "I accept

---

[2]  Defendant asks the court to take judicial notice of four unpublished California appellate court opinions.  (Doc. No. 13 at 2.)  Defendant cites each of the four cases in its pending motion.  (Doc. No. 12 at 20.)  The court declines to take judicial notice of the orders in these cases.  *See Phillips v. Nat'l City Bank of Ind. First Franklin Div.*, 462 F. App'x 666, at *1 n.1 (9th Cir. 2011) ("Judicial notice is not required for the court to consider the cited opinions as matters of law and potentially persuasive precedents.").

[3]  Defendant urges the court to disregard plaintiff's late-filed opposition and consider the pending motion unopposed.  (Doc. No. 17 at 6.)  The court declines to exercise its discretion to do so and will consider plaintiff's arguments presented in her amended opposition.

1  the terms and conditions above" and given the applicant instructions to insert an electronic

2  signature.  (*Id.*)  Only after completion of these steps would the employment application have

3  been submitted to defendant.  (*Id.*)

4        If an applicant later received a job offer, March attests that the applicant would receive an

5  email (at the address used in creating their account) requesting that the candidate log into their

6  account and sign their offer letter and employment agreement.  (*Id.* at ¶ 6.)  The employment

7  agreement contains an arbitration agreement and instructions on how to opt out of arbitration.

8  (*Id.*)  The last screen of the employment agreement would prompt the applicant to agree to the

9  terms before proceeding with the remaining onboarding steps.  (*Id.* at ¶ 7.)

10        March declares that he reviewed the audit trail of plaintiff's account, also submitted to the

11  court, and confirms that she completed the above-outlined employment application process,

12  which includes signing the first arbitration agreement, on August 30, 2017 at 10:05pm.  (*Id.* at

13  ¶¶ 9–10; Doc. No. 17-2 at 3.)  He attests that she logged in again and electronically signed her

14  offer letter and employment agreement containing the second arbitration agreement on

15  September 9, 2017 at 10:12 and 10:13pm.  (*Id.*)  He states that due to the secure nature of the

16  application and onboarding process, plaintiff's signature could only have been placed on the

17  arbitration agreements using her email and unique password, which she created herself.  (Doc.

18  No. 17-1 at ¶ 11.)  Finally, he attests that plaintiff completed other steps of the onboarding

19  process two days later, which would not have been possible to complete via the online platform

20  without first electronically signing her employment agreement.  (*Id.* at ¶ 10.)

21  **LEGAL STANDARD**

22        A written provision in any contract evidencing a transaction involving commerce to settle

23  a dispute by arbitration is subject to the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  The

24  FAA confers on the parties involved the right to obtain an order directing that arbitration proceed

25  in the manner provided for in a contract between them.  9 U.S.C. § 4.  In considering a motion to

26  compel arbitration, the "court's role under the Act . . . is limited to determining (1) whether a

27  valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

28  dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

4

2000).  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate.  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).  "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011).  However, parties may rely upon generally applicable contract defenses to invalidate an agreement to arbitrate.  *See id*. at 339.

There is an "emphatic federal policy in favor of arbitral dispute resolution."  *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985).  As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  However, the Supreme Court has clarified that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules."  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022).

## DISCUSSION

In its pending motion to compel arbitration, defendant argues that the FAA requires the court to enforce the Arbitration Agreement because the parties entered into a valid, written agreement, which is binding and encompasses plaintiff's claims.  (Doc. No. 12 at 12–14.)  Defendant also argues that the Arbitration Agreement is not unconscionable and no grounds exist for its revocation.  (*Id*. at 14–17.)  Of these elements, plaintiff contests only the validity of the Arbitration Agreement based on the legitimacy of her electronic signature.  (Doc. No. 16 at 3–4.)  In addition, plaintiff argues that defendant has waived its right to compel arbitration through its delay, and that her PAGA claims are not subject to arbitration.  (*Id*. at 4–7.)

### A.      Plaintiff's Signature

Plaintiff argues that she is not bound by the Arbitration Agreement because she did not sign it and that her digital signature must therefore have been added later.  (Doc. No. 16 at 4.)  Plaintiff states that she does not remember seeing or reviewing the Arbitration Agreement during the onboarding process and that she would have remembered signing it.  (*Id*.)  She concludes that

1  therefore she was not a signatory, did not agree to arbitration, and cannot be compelled to

2  arbitrate her claims.  (*Id.*)

3      A forged signature can be sufficient to invalidate an arbitration agreement.  *Cornejo v.*

4  *Spenger's Fresh Fish Grotto*, No. 09-cv-05564-MHP, 2010 WL 1980236, at *4 (N.D. Cal.

5  May 17, 2010) (citing 9 U.S.C. § 2).  California Civil Code § 1633.9 provides:  "An electronic

6  record or electronic signature is attributable to a person if it was the act of the person.  The act of

7  the person may be shown in any manner, including a showing of the efficacy of any security

8  procedure applied to determine the person to which the electronic record or electronic signature

9  was attributable."  Cal. Civ. Code § 1633.9(a).  The burden of proof as to the authenticity of an

10  electronic signature is by a preponderance of the evidence.  *Ruiz v. Moss Bros. Auto Grp.*, 232

11  Cal. App. 4th 836, 846 (2014).  This is "not a difficult evidentiary burden to meet" and can be

12  met with evidence in the form of a declaration from a business manager explaining the basis upon

13  which one can infer that an electronic signature was the result of the act of a party.  *Id.* at 844.

14  For example, such evidence could include an explanation that a signature could have only been

15  placed by a person with plaintiff's unique login, that all employees are required to use unique

16  logins to access the relevant HR system and sign forms, and that the date and time printed next to

17  an electronic signature indicates the date and time the signature was made.  *Id.*  However, an

18  "unsupported assertion that [the plaintiff] was the person who electronically signed," without any

19  such explanation, will not sufficiently authenticate the plaintiff's electronic signature.  *Id.*

20      Here, the two March declarations provide sufficient detail for the court to conclude that

21  plaintiff's electronic signature on the Arbitration Agreement was authentic and not forged.  (*See*

22  Doc. Nos. 12-3, 17-1.)  The March reply declaration details how a job applicant would have been

23  required to create an account on the Career Center page of defendant's website, which requires

24  entering an email address and creating a unique password.  (Doc. No. 17-1 at ¶ 4.)  This password

25  would not be shared with defendant and would only be known by the applicant.  (*Id.*)  The

26  arbitration agreement would have appeared on one of the final screens of the application, and the

27  last screen would have given instructions to provide an electronic signature to accept the terms

28  and conditions.  (*Id.* at ¶ 5.)  Only after signing and pressing the "accept" button would the

application be submitted to defendant.  (*Id.*)  Further, the March declaration details that if an applicant received an offer, the applicant would also receive an email communication prompting them to log back into their account using their email address and password to review and electronically sign their offer letter and employment agreement.  (*Id.* at ¶ 6.)  The system would not allow an applicant to proceed to the remaining onboarding steps without first executing the employment agreement.  (*Id.* at ¶ 7.)  March attests that he reviewed the audit trail of plaintiff's account activity and notes the dates and times that plaintiff electronically signed the various agreements.  (*Id.* at ¶¶ 9–10.)  These dates and times align with those generated by the log of plaintiff's account activity that defendant also submitted in support of its reply brief.  (Doc. No. 17-2.)  March declares that plaintiff completed the onboarding process, including later steps such as signing an I-9 form, which the online platform would not have permitted her to complete without first electronically signing the employment agreement.  (Doc. No. 17-1 at ¶ 10.)  The audit trail log displays later onboarding steps including the I-9 form.  (Doc. No. 17-2 at 2.)  This type of explanation and evidence is precisely that which the California Court of Appeal in *Ruiz* concluded properly supported a finding that the electronic signature in question belonged to the plaintiff.  *See Ruiz*, 232 Cal. App. 4th at 844.

While plaintiff claims to believe that her digital signature was forged, she presents no evidence to support this claim.  "[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. . . .  [T]he party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."  *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011).  Plaintiff does not allege, for example, that her login information was shared with others, or that she was unable to access the online system during the time period that she purportedly electronically signed the agreements.  Plaintiff also has presented no evidence disputing her creation of an account to apply for a position with defendant, and instead admits to participating in the online onboarding process.  (Doc. No. 16-1 at ¶ 4.)  Thus, the audit of plaintiff's account activity, the evidence of the steps taken by plaintiff in the online system including placing her electronic signature and more, and defendant's explanation of the secure credentials that plaintiff was required to use in order to

log into the online system and place her electronic signature at issue, taken together establish by a preponderance of the evidence that her electronic signature was authentic. *See Warren v. Del Taco Restaurants, Inc*., No. 18-cv-00082-JGB-SP, 2018 WL 6167937, at *4 (C.D. Cal. Apr. 23, 2018) (finding that the plaintiff's electronic signature was authentic where the defendant's vice president provided a similar explanation of an electronic system and the plaintiff presented no evidence to dispute her ability to access the system or sign her onboarding documents other than a general denial of doing so). Accordingly, the court finds plaintiff's electronic signature was authentic and will deny plaintiff's challenge to the validity of the Arbitration Agreement. *See Nanavati v. Adecco USA, Inc*., 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (concluding that the defendant's declaration, which established in detail the basis for concluding that the plaintiff electronically signed the agreement, easily satisfied the defendant's "low burden to authenticate [the p]laintiff's electronic signature and establish the existence of a valid arbitration agreement" where the plaintiff argued that the defendant had not met this burden but did not challenge the facts set forth in the defendant's declaration).

## B. Defendant's Delay

Next, plaintiff argues that even if the court finds the Arbitration Agreement to be valid, defendant has waived its right to compel arbitration by moving to do so months after being served with plaintiff's original complaint. (Doc. No. 16 at 6.) In asserting a waiver of the right to compel arbitration in this context, plaintiff must demonstrate: (1) defendant's knowledge of an existing right to compel arbitration; and (2) defendant's intentional acts inconsistent with that existing right. *In re Google Assistant Priv. Litig.*, No. 19-cv-04286-BLF, 2024 WL 251407, at *3 (N.D. Cal. Jan. 23, 2024) (citing *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023)). Until recently, a party seeking to establish the waiver of a right to arbitrate was also required to demonstrate a third element, "prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990), *abrogated on other grounds by Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). Although in this case plaintiff advances arguments addressing the issue of prejudice she has purportedly suffered, the Supreme Court has eliminated the third element of prejudice and thereby lightened

8

1    plaintiff's burden here.  *See Morgan*, 596 U.S. at 417 (holding that, under the FAA, a court may

2    not "condition a waiver of the right to arbitrate on a showing of prejudice").  Since the Supreme

3    Court's decision in *Morgan*, "the party opposing arbitration still bears the burden of showing

4    waiver, [but] the burden is no longer 'heavy.'"  *Armstrong v. Michaels Stores, Inc.*, 59 F.4th

5    1011, 1014–15 (9th Cir. 2023) (explaining that "the burden for establishing waiver of an

6    arbitration agreement is the same as the burden for establishing waiver in any other contractual

7    context").

8            As to the first element of waiver, defendant's knowledge of an existing right to compel

9    arbitration, plaintiff asserts that defendant "was aware of the relevant arbitration provisions when

10   it was served with the [c]omplaint."  (Doc. No. 16 at 6.)  In its reply brief, defendant does not

11   refute this assertion or in any way respond to it.  (Doc. No. 17.)  Instead, defendant argues that it

12   has not acted inconsistently with exercising the right to compel arbitration, as there has been no

13   undue delay on its part.  (*Id.* at 11.)  Defendant explains that in the approximately four months

14   between the filing of plaintiff's complaint and defendant's filing of the pending motion to compel

15   arbitration, counsel for the parties have held one telephonic conference to discuss submitting

16   plaintiff's claims to arbitration, but the parties have not engaged in any discovery or submitted

17   any joint reports to the court.  (*Id.* at 11–12; Doc. No. 12-1 at ¶ 3.)

18           "[A] party's extended silence and delay in moving for arbitration may indicate a conscious

19   decision to continue to seek judicial judgment on the merits of [the] arbitrable claims, which

20   would be inconsistent with a right to arbitrate."  *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir.

21   2016) (internal citations and quotations omitted).  While a precise minimum length of delay has

22   not been specified as indicating such a conscious decision, the Ninth Circuit has indicated that

23   litigating in federal court for well over a year in combination with the filing of substantive

24   motions weighs in favor of a finding of waiver.  *See Hill*, 59 F.4th at 476 (finding that the

25   defendant acted inconsistently with its right to compel arbitration where it filed a motion for

26   partial summary judgment as to a key issue in the case and litigated the action for nearly five

27   years); *Martin,* 829 F.3d at 1126 (finding the right to arbitration was waived where the defendant

28   litigated in federal court for seventeen months, filed a motion to dismiss on a key merits issue,

1   received an adverse ruling, and then moved to compel arbitration); *Van Ness Townhouses v. Mar*

2   *Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding waiver of the right to arbitrate where

3   defendant litigated in court for two years and filed a motion to dismiss on the merits).

4   Particularly relevant here, moving to compel arbitration within a year of the filing of plaintiff's

5   complaint, in combination with never seeking or obtaining a ruling on the merits of the action,

6   has been found by the Ninth Circuit to indicate no waiver of the right to arbitrate. *Armstrong*, 59

7   F.4th at 1016 (finding no waiver under these circumstances, despite the defendant's propounding

8   of limited discovery requests).

9        In this case, defendant moved to compel arbitration well within a year of the filing of

10   plaintiff's complaint, and its motion to compel arbitration is the first substantive motion filed in

11   this action.  Accordingly, the court finds that defendant's brief delay in filing the pending motion

12   is insufficient to establish a waiver of the right to arbitrate.  *See Capps v. JPMorgan Chase Bank,*

13   *N.A.*, No. 2:22-cv-00806-DAD-JDP, 2023 WL 3030990, at *7 (E.D. Cal. Apr. 21, 2023) (finding

14   that almost ten months of delay did not establish waiver where the defendant did not seek nor

15   obtain any ruling from the court on the merits of the action).

16   **C.       Plaintiff's PAGA Claims**

17        Defendant argues that because the Arbitration Agreement is enforceable, plaintiff must be

18   compelled to arbitrate her individual claims, including her individual PAGA claims.  (Doc. No.

19   12 at 19–20.)  Defendant argues that plaintiff's non-individual PAGA claims should be stayed

20   until arbitration is completed.  (*Id.*)  In her opposition, plaintiff argues that because the PAGA

21   claims are brought on behalf of the state of California, and the state never agreed to arbitrate, the

22   PAGA claims are not subject to arbitration and should not be stayed.  (Doc. No. 16 at 5.)

23        The court rejects plaintiff's argument and will adopt defendant's proposed course of

24   action.  Plaintiff's individual PAGA claims are subject to arbitration despite the lack of consent

25   by the state of California.  *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 (2022)

26   (finding that the petitioner "was entitled to enforce the agreement insofar as it mandated

27   arbitration of [the respondent's] individual PAGA claim").  Further, the California Supreme

28   Court has instructed that trial courts may adopt the following procedure when a plaintiff files a

10

1     PAGA action comprised of individual and non-individual claims and the individual claims are

2     compelled to arbitration:

> [T]he trial court may exercise its discretion to stay the non-individual claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure. Following the arbitrator's decision, any party may petition the court to confirm or vacate the arbitration award under section 1285 of the Code of Civil Procedure. If the arbitrator determines that [the plaintiff] is an aggrieved employee in the process of adjudicating his individual PAGA claim, that determination, if confirmed and reduced to a final judgment (Code Civ. Proc., § 1287.4), would be binding on the court, and [the plaintiff] would continue to have standing to litigate his nonindividual claims. If the arbitrator determines that [the plaintiff] is not an aggrieved employee and the court confirms that determination and reduces it to a final judgment, the court would give effect to that finding, and [the plaintiff] could no longer prosecute his non-individual claims due to lack of standing.

11     *Adolph v. Uber Techs., Inc.,* 14 Cal. 5th 1104, 1123–24 (2023).

12        Since the decision in *Adolph*, other district courts in California have concluded that

13     plaintiffs retain standing to pursue non-individual PAGA claims in federal court when their

14     individual PAGA claims have been ordered to arbitration and have adopted the above-described

15     procedure. *See Filemon Colores v. Ray Moles Farms, Inc.,* No. 1:21-cv-00467-JLT-BAM, 2023

16     WL 6215789, at *3 (E.D. Cal. Sept. 25, 2023) (noting that the court found persuasive the

17     defendant's argument that "this case should be stayed pending the outcome of the arbitration

18     process for the reasons explained in *Adolph* itself"); *Radcliff v. San Diego Gas & Elec. Co.*, No.

19     20-cv-01555-H-MSB, 2023 WL 8264445, at *1 (S.D. Cal. Nov. 28, 2023) (ordering the parties to

20     arbitrate the plaintiff's individual PAGA claim and staying the representative PAGA claim

21     pending the outcome of the arbitration); *Rubio v. Marriott Resorts Hosp. Corp*., No. 8:23-cv-

22     00773-FWS-ADS, 2023 WL 8153535, at *4 (C.D. Cal. Oct. 17, 2023) ("The court also adopts

23     *Adolph*'s proposed procedure and stays [the p]laintiff's non-individual PAGA claims pending the

24     result of arbitration.").

25        Accordingly, the court will stay plaintiff's representative PAGA claims in keeping with

26     the decision and instruction of the California Supreme Court in *Adolph*.

27     /////

28     /////

**CONCLUSION**

For the reasons explained above:

1. Defendant's request for judicial notice (Doc. No. 13) is denied;

2. Defendant's motion to compel arbitration of plaintiff's individual claims (Doc. No. 12) is granted;

3. Plaintiff's representative PAGA claims are stayed pending the completion of arbitration; and

4. Plaintiff and defendant are required to notify the court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision.

IT IS SO ORDERED.

Dated: __April 29, 2024__        

DALE A. DROZD
UNITED STATES DISTRICT JUDGE